**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

**SYNTHIA CHINA BLAST, 97-A-0308,**

                               **Plaintiff,**           **07-CV-0567(Sr)**

**v.**

**BRIAN FISCHER, Commissioner, et al.,**

                               **Defendant.**

_____

## **DECISION AND ORDER**

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment. Dkt. #50.

        Plaintiff filed motions for contempt of a settlement agreement (Dkt. #73 & Dkt. #83), but subsequently moved to withdraw those motions (Dkt. #83 & Dkt. #91). Plaintiff also moved for a preliminary injunction enjoining defendants from denying plaintiff certain items pertaining to the practice of Santeria (Dkt. #75), and subsequently moved to withdraw that motion. Dkt. #83 & Dkt. #91. Plaintiff moved to withdraw her consent to settlement and reopen the case (Dkt. #76), but subsequently moved to withdraw that motion as well. Dkt. #83. Plaintiff has not moved to withdraw a motion to appoint counsel (Dkt. #88); motion for discovery (Dkt. #89); and motion to schedule a telephone conference. Dkt. #90. For the following reasons, the motions are denied.

**BACKGROUND**

Plaintiff, an inmate at the Wende Correctional Facility ("Wende"), commenced this action *pro se*, alleging that the New York State Department of Correctional Services ("DOCS"), was depriving her of the opportunity to practice the Santeria religion, in violation of her constitutional rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Dkt. #11.

The parties submitted a stipulation of settlement and order of dismissal (Dkt. #71), which the Court "SO ORDERED" on October 23, 2009. Dkt. #72. The stipulation of settlement provided, *inter alia*, that defendants would

> issue Blast a religious permit for the items agreed to by the parties, deliverable upon Blast's execution of this agreement. Blast acknowledges that the items set forth in the religious permit are sufficient for Blast to freely and adequately practice Blast's religion.

Dkt. #71, ¶ 2. The religious permit granted plaintiff permission to possess, *inter alia*, "up to four bottles (each eight ounces or less) of ritual water and up to five bottles of spiritual water a month (each eight ounces or less) from approved commercial vendors." Dkt. #83, p.11. With respect to vendors, the permit provides as follows:

> You may submit information on vendors you wish to be considered for purchase of these items, in order to have the vendors approved. Vendors will be asked for ingredients for the . . . waters . . . . Items purchased may be tested for any hazardous or dangerous ingredients or materials. Items purchased may not contain alcohol or contraband drugs.

>     Items such as . . . waters . . . must be purchased and stored
>     in appropriate plastic containers.

Dkt. #83, p.12.

Edward Bly, Director of the Correction Emergency Response Team ("CERT"), declares that all of the vendors suggested by plaintiff "indicated all of their waters contained alcohol." Dkt. #86, ¶ 8. Colonel Bly declares that DOCS retained a Santeria expert, Dr. Terry Rey, who "was not able to find waters without alcohol." Dkt. #86, ¶ 9. As a result, DOCS inquired what ingredients plaintiff would require to prepare the waters, but concluded that some of the ingredients requested would pose security concerns. Dkt. #86, ¶ ¶ 11-15. Subsequently, DOCS identified three potential vendors:

>     One vendor informed us by e-mail that they had Rose Water
>     and Orange Water available without alcohol. One vendor
>     informed us by fax that they had Holy Water and Pyramid
>     Water that did not contain alcohol. Another vendor
>     advertises Camphor Water, Holy Water, Orange Water,
>     Rose Water, and St. Claire Water. Their internet information
>     explains that these have essential oils in distilled water and
>     claim that the waters are not alcohol based.

Dkt. #86, ¶ 17. Colonel Bly declares that the "tests will be conducted at Department expense," and states that "[b]ecause of the cost of testing, [DOCS] agrees to provide one spiritual water and one ritual water," each in eight ounce plastic containers. Dkt. #86, ¶ 18.

## DISCUSSION AND ANALYSIS

Although plaintiff seeks to withdraw her motions until such time as counsel has been appointed (Dkt. #91), appointment of counsel is not warranted. Plaintiff has

clearly articulated her concerns with respect to DOCS' adherence to the terms of the settlement agreement and the Court is prepared to address those concerns based upon the plain terms of the agreement and DOCS' declaration as to their efforts at compliance.

The terms of the religious permit incorporated into the settlement agreement clearly provide that the "[i]tems purchased may not contain alcohol or contraband drugs." Dkt. #83, p.12. The justification for such a provision is self-evident. Thus, DOCS' refusal to approve purchases from vendors representing that their waters contain alcohol is entirely appropriate.

DOCS' proposed limitation on the amount of waters plaintiff may possess is more problematic. The terms of the religious permit incorporated into the settlement agreement clearly grant plaintiff permission to possess "up to four bottles (each eight ounces or less) of ritual water and up to five bottles of spiritual water a month (each eight ounces or less) from approved commercial vendors." Dkt. #83, p.11. DOCS declares that it has identified three vendors offering six different types of waters that purport to be alcohol-free, yet it seeks to limit plaintiff to two eight ounce containers of waters "[b]ecause of the expense of testing." Dkt. #86, ¶ 18. As the religious permit incorporated into the settlement agreement provides that "[i]tems purchased may be tested for any hazardous or dangerous ingredients or materials," it appears that such testing was contemplated and it is unclear why such testing would now be a basis to limit the number of waters plaintiff would be permitted to possess. Dkt. #83, p.12.

Thus, absent further explanation from DOCS, it is the position of the Court that the terms of the religious permit incorporated into the settlement agreement should not be altered and that plaintiff should be permitted to order a variety of waters DOCS has identified as purportedly alcohol-free, subject to testing for hazardous ingredients as contemplated in the religious permit and subject to DOCS' discretion regarding vendor management. For example, the Court would consider it reasonable for DOCS to require plaintiff to order from the vendor offering the most varieties of waters and, if that vendor's waters prove acceptable, to limit plaintiff to the five varieties of waters offered by that vendor. Furthermore, the Court recognizes DOCS' discretion in deciding whether to stagger the orders so as to test one product at a time or to test all products from the same vendor at the same time. The Court is confident that DOCS will continue to exercise good faith efforts to identify other vendors offering greater varieties of alcohol-free waters and to discern whether the vendors identified offer additional varieties of alcohol-free waters so as to eventually allow plaintiff the maximum access contemplated in the religious permit.

As it is clear that DOCS has acted in good faith in its efforts to comply with the terms of the settlement agreement thus far, there is no basis to withdraw that settlement or to find contempt of that agreement.

As this case was closed following entry of the settlement agreement, a preliminary injunction is procedurally inappropriate and discovery is unnecessary. Moreover, the Court is confident that this Decision and Order obviates any need for a telephone conference.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motions for contempt (Dkt. #73 & Dkt. #83); for a preliminary injunction (Dkt. #75); to withdraw her consent to settlement and reopen the case (Dkt. #76); to appoint counsel (Dkt. #88); for discovery (Dkt. #89); to schedule a telephone conference (Dkt. #90); and to withdraw her motion for contempt pending appointment of counsel. Dkt. #91.

**SO ORDERED.**

DATED:   Buffalo, New York
         July 6, 2010

      <u>s/ H. Kenneth Schroeder, Jr.</u>
      **H. KENNETH SCHROEDER, JR.**
      **United States Magistrate Judge**