UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**SYNTHIA CHINA BLAST**, 97-A-0308,

                       **Plaintiff,**                  07-CV-0567(Sr)

v.

**BRIAN FISCHER, Commissioner, et al.,**

                       **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all further proceedings, including the entry of final judgment. Dkt. #50.

Currently before the Court are plaintiff's motion for a preliminary injunction enjoining defendants from prohibiting plaintiff's direct purchase of Santeria ritual and spiritual waters from approved vendors (Dkt. #93), and plaintiff's motions for civil contempt of this Court's Order of Stipulated Settlement. Dkt. ## 95 & 101. For the following reasons, the motions are denied.

## BACKGROUND

Plaintiff, a transexual inmate at the Wende Correctional Facility ("Wende"), commenced this action *pro se*, alleging that the New York State Department of Correctional Services ("DOCS"), was depriving her of the opportunity to practice the

Santeria religion, in violation of her constitutional rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  Dkt. #11.

The parties submitted a stipulation of settlement and order of dismissal (Dkt. #71), which the Court "SO ORDERED" on October 23, 2009.  Dkt. #72.  The stipulation of settlement provided, *inter alia*, that defendants would

> issue Blast a religious permit for the items agreed to by the parties, deliverable upon Blast's execution of this agreement.  Blast acknowledges that the items set forth in the religious permit are sufficient for Blast to freely and adequately practice Blast's religion.

Dkt. #71, ¶ 2.  The religious permit granted plaintiff permission to make a request to the local Chaplain in accordance with Directive 4202, paragraph G, for a minimum of two authentic Santeria religious holidays. Dkt. #83, p.11.  The religious permit also granted plaintiff permission to possess, *inter alia*, "up to four bottles (each eight ounces or less) of ritual water and up to five bottles of spiritual water a month (each eight ounces or less) from approved commercial vendors." Dkt. #83, p.11.  With respect to vendors, the permit provides as follows:

> You may submit information on vendors you wish to be considered for purchase of these items, in order to have the vendors approved.  Vendors will be asked for ingredients for the . . . waters . . . .  Items purchased may be tested for any hazardous or dangerous ingredients or materials.  Items purchased may not contain alcohol or contraband drugs.  Items such as . . . waters . . . must be purchased and stored in appropriate plastic containers.

Dkt. #83, p.12.

The approval of vendors for ritual and spiritual waters has been problematic because of the prevalence of alcohol in many of the water mixtures, which is a security concern both because alcohol is flammable and because of concerns that inmates may ingest the water for its alcohol content.  Dkt. #86, ¶ 10.  DOCS eventually identified three potential vendors offering Orange Water, Holy Water, Pyamid Water, Camphor Water, Rose Water and St. Claire Water containing essential oils within distilled water rather than alcohol.  Dkt. #86, ¶ 17.  Plaintiff rejected these options because they "are not Santeria spiritual and ritual waters used in Santeria/Yoruba religion," noting, for example, that the Holy water is Catholic religious water.  Dkt. #94, ¶ 11; Dkt. #98, ¶ 18.

Plaintiff declares that she has provided defendants multiple copies of catalogs identifying Santeria ritual and spiritual waters which do not contain alcohol, including the Original Products Company in Bronx, New York.  Dkt. #94, ¶ ¶ 2-3.  Plaintiff further declares that although this vendor provided letters listing ingredients, DOCS forced her to return five spiritual waters and four ritual waters received from Original Products without even testing the waters as contemplated in the religious permit issued to plaintiff.  Dkt. #94, ¶¶ 5-6.  Similarly, plaintiff declares that she was forced to return four containers of ritual waters ordered from Azure Green, Inc.  Dkt. #94, ¶ 7.  In addition to Original Products and Azure Green, Inc., plaintiff identifies Wisdom Products and Church Goods as sources of ritual and spiritual waters for practitioners of Santeria.  Dkt. #94, ¶ 14.

DOCS declares that upon receipt of the waters plaintiff ordered from Azure Green, Inc., a Senior Attorney with Counsel's Office at DOCS contacted Azure Green, Inc., and received a return letter by fax stating that all of their waters and washes, with the exception of the Holy Water and Pyramid Water, contain alcohol. Dkt. #98, ¶ ¶ 21-22 & p.43. DOCS declares that it has sought information about ingredients for waters from Church Goods, *aka* The Luck Shop, as well as another vendor, Divinafe, *aka*, Inesca Imports, but received no response. Dkt. #98, ¶ ¶ 23-24.

DOCS declares that it has approved Original Products as a vendor for Lake Water, Rain Water, River Water and Sea Water, ordered these products and offered them to plaintiff for sale at the cost of the waters and price of shipping, but plaintiff refused to purchase them unless she was permitted to place the order with the vendor directly. Dkt. #98, ¶ ¶ 26 & 39. DOCS further declares that it has approved Wisdom Products, *aka* Indio Products, as a vendor for Ven A Mi (Come to Me), Reversible, San Antonio (St. Anthony), spiritual waters, as well as fourteen different types of bath and floor washes, so long as the ingredient labels accompanying the waters do not indicate alcohol as an ingredient. Dkt. #98, ¶ ¶ 29-31, 34 & 39.

DOCS declares that it is requiring plaintiff to order the waters through the facility chaplain because "Santeria vendors could not furnish products in commercially sealed containers, with labels, as the parties had anticipated when the religious permit was issued." Dkt. #98, ¶ 3 & pp.52 & 61. Plaintiff states that DOCS was aware that the waters were not commercially sealed prior to execution of the settlement. Dkt. #99, ¶ 8.

DOCS further declares that it

> wants to order the waters directly for both security reasons and for administrative reasons. If the Department orders the waters and takes delivery and receipt of the waters, then the Department can set up ordering and distribution of the waters for any other Santeria or Yoruba inmates who seek the same items. . . . If the Department orders the waters, then there would be little or no incentive for Blast or any other inmate to seek to have contraband delivered in the waters.

Dkt. #98, ¶ 41. DOCS agrees to show plaintiff invoices for the waters so as to allay concerns that DOCS would overcharge plaintiff. Dkt. #98, ¶ 40.

## DISCUSSION AND ANALYSIS

Plaintiff complains that although she identified Original Products and Wisdom Products in October, 2009, DOCS did not approve them as vendors for more than a year. Dkt. #99, ¶¶ 27-28. Pursuant to the terms of the settlement agreement, plaintiff argues that she should be permitted to order ritual and spiritual waters directly from approved vendors, subject to inspection and testing by DOCS. Dkt. #94, ¶ 10. Plaintiff complains that it is a violation of her religious beliefs to rely upon the Catholic Chaplin to order her Santeria waters. Dkt. #99, ¶¶ 17-18. As a practical matter, plaintiff notes that because she is allowed to order oils and eggshells directly from the same vendors that DOCS is obtaining the waters, she will be forced to incur multiple shipping and handling fees. Dkt. #99, ¶¶ 23-24. Plaintiff also complains that she has not been allowed to celebrate two religious holidays per year as provided in the stipulated settlement. Dkt. #101, ¶ 12.

As an initial matter, the Court repeats its prior determination (Dkt. #92), that because this case was closed following entry of the settlement agreement, a preliminary injunction is procedurally inappropriate.

With respect to the motions for contempt, it is well settled that a "party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Commercial, LTDA, v. GE Medical Systems Info. Techs, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation omitted). "It need not be established that the violation was willful." *Id.*  However, a contempt order is a potent weapon to which courts should not resort where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (quotation and citation omitted).

The Court does not find that defendants lacked diligence in their efforts to locate appropriate vendors for the spiritual and ritual waters. To the contrary, DOCS retained a Santeria expert, inquired of numerous potential vendors, considered allowing plaintiff to create her own religious waters, and ultimately approved two vendors. Given the lack of commercially sealed containers and discrepancies between vendors' representations regarding the use of alcohol as an ingredient and the ingredient lists provided by vendors, as well as the potential for alterations in ingredients from one

order to another, the Court does not find DOCS' direction that plaintiff order the waters through its personnel so that they can confirm the absence of alcohol as an ingredient in each water ordered, to be onerous.  Moreover, the requirement that plaintiff place her orders through DOCS' personnel is not violative of the terms of the settlement agreement, which is silent as to the procedure for placing orders with vendors. However, the Court will direct DOCS to allow plaintiff, if she so chooses, to order her oils and eggshells along with her waters so as to avoid multiple shipping and handling fees from the same vendor.

Plaintiff has not proffered sufficient facts to the Court with respect to her claim of denial of religious holidays to assess the contempt motion.  For example, plaintiff does not aver that she requested any particular holiday ritual or gathering in accordance with the procedures set forth in the religious permit.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motions for a preliminary injunction (Dkt. #93) and contempt (Dkt. ##95 & 101).

**SO ORDERED.**

DATED:   Buffalo, New York
         August 29, 2011

　　　　　　　　　　　　　　　　　　　　　　　s/ H. Kenneth Schroeder, Jr.
　　　　　　　　　　　　　　　　　　　　　　　**H. KENNETH SCHROEDER, JR.**
　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**