UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**SYNTHIA CHINA BLAST, 97-A-0308,**

                        **Plaintiff,**          07-CV-0567(Sr)

v.

**BRIAN FISCHER, Commissioner, et al.,**

                        **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all further proceedings, including the entry of final judgment. Dkt. #50.

Currently before the Court are plaintiff's motions to reopen this matter and hold the New York State Department of Correctional Services ("DOCS"),[1] in civil contempt of this Court's Order of Stipulated Settlement. Dkt. ## 110, 112, 113 & 133. For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff, a transgender male-to-female inmate at the Wende Correctional Facility ("Wende"), commenced this action *pro se*, alleging that DOCS was depriving

---

[1] Although DOCS has merged with the New York State Division of Parole to form the New York State Department of Corrections and Supervision ("DOCCS"), the Court will continue to utilize DOCS for consistency.

her of the opportunity to practice the Santeria religion, in violation of her constitutional rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").  Dkt. #11.

The parties submitted a stipulation of settlement and order of dismissal (Dkt. #71), which the Court "SO ORDERED" on October 23, 2009.  Dkt. #72.  The stipulation of settlement provided, *inter alia*, that defendants would

> issue Blast a religious permit for the items agreed to by the parties, deliverable upon Blast's execution of this agreement.  Blast acknowledges that the items set forth in the religious permit are sufficient for Blast to freely and adequately practice Blast's religion.

Dkt. #71, ¶ 2.  As relevant to the instant dispute, the religious permit issued by DOCS granted plaintiff permission to "possess up to six bottles (each one ounce or less)" of ritual and prayer oils" in plaintiff's cell.  Dkt. #83, p.11.

A Memorandum from D.S.P. Crowley to the Package Room Staff at Wende, dated June 13, 2011, provides that plaintiff may order Santeria oils from Wisdom Products and/or Indio Products and explains that:

> The Santeria prayer oils they sell come in one (1) oz. or less glass bottles.  The Santeria ritual oils come in 2 oz plastic bottles.  He will be allowed to have a total of six bottles of the oils, each two ounces or less, in his cell at a time.  He may not have any oils in bottles larger than two ounces and squirt tops will not be permitted.  He will be required to turn in an empty bottle in order to receive a new bottle.

> The prayer oils which are approved for his purchase are on the attached copy of the Wisdom Products Catalog, page 72. Upon arrival, the oils mut go to Chaplain Snyder who is responsible for delivering them to Inmate Blast and doing a one for one exchange, if required.

Dkt. #114, p.7.

On April 2, 2012, plaintiff withdrew her motion to hold defendants in contempt of the settlement following issuance of an amended religious permit, which, as relevant to the instant dispute, provided as follows:

> Ritual and prayer oils.  You may possess up to six bottles (each two ounces or less) in your cell.  You may purchase up to six bottles of oil per month from approved commercial vendors.  The Chaplain can maintain up to 32 ounces of oil for you, to refill the plastic or glass bottles in your cell, which hold one or two ounces.  You have worked out an exchange process with the staff at Wende CF, allowing you to exchange bottles of oil.  You are currently using plastic or glass bottles of oil in either a one or two ounce size.  This process to use these bottles can continue at Wende CF or if you are transferred.  No squirt tops are permitted.

Dkt. #108, p.2, ¶¶ 4-5 &  p.8, ¶ 2.  The amended religious permit also states that "[i]tems such as the oils, waters and eggshell must be purchased and stored in appropriate plastic containers, unless the oils are stored in one or two ounce glass bottles."  Dkt. #108, p.9, ¶ 7.  The amended religious permit also allows plaintiff to keep a shrine in plaintiff's cell in accordance with Directive 4202, paragraph N.2.d and specifically states that the "shrine may have normally allowable items, such as tobacco (loose and cigars)."  Dkt. #108, p.9, ¶ 5. The amended religious permit states that it will serve as plaintiff's "statewide religious item exemption," but does not allow plaintiff "any special privileges beyond those afforded to other offenders" should plaintiff be "sent to SHU, or on a court trip, or a medical trip."  Dkt. #108, p.11.

On March 23, 2013, plaintiff was transferred to the Auburn Correctional Facility ("Auburn"). Dkt. #111. On October 24, 2013, plaintiff was placed in Administrative Segregation, which is housed in the Special Housing Unit ("SHU"), after reporting that multiple inmates in the Protective Custody Unit had threatened to sexually assault plaintiff. Dkt. #111, pp.2-3, ¶¶ 5 & 7. By Memorandum dated November 5, 2013, Auburn DSP Justin Thomas informed plaintiff that she would not be allowed the items set forth in the religious exemption while in Administrative Segregation in SHU. Dkt. #111, ¶ 8. Plaintiff objects that the religious exemption permit denies special privileges solely if plaintiff is sent to SHU for disciplinary reasons. Dkt. #111, p.3, ¶ 9. Plaintiff complains that she may be kept in Administrative Segregation, and therefore denied the right to practice Santeria, for years. Dkt. #111, p.4, ¶¶ 11-12.

On December 23, 2013, plaintiff was transferred to the Shawangunk Correctional Facility ("Shawangunk"), and placed in Involuntary Protective Custody. Dkt. #112, ¶ 5. Despite being presented with the religious permit, officials at Shawangunk confiscated six glass bottles of prayer oils, each one-third of an ounce, and refused to allow plaintiff to possess glass bottles and loose tobacco and cigars. Dkt. #112, ¶ 6 & Dkt. #122.

Plaintiff was transferred to the Sullivan Correctional Facility ("Sullivan"), where the prayer oils and loose tobacco and cigars continued to be withheld. Dkt. #125. In a declaration dated May 16, 2014, Sullivan Superintendent Patrick Griffin states that plaintiff is housed in Involuntary Protective Custody which is located within

SHU.  Dkt. #127, ¶ 5.  In accordance with DOCS Directive #4911, Superintendent Griffin declares that

> Sullivan Correctional Facility does not permit inmates items that are made of glass and the Commissary does not sell glass products.  Glass is considered contraband and has been used as a weapon and an instrument to do self-harm. Inmate Blast would be permitted to order the oils in glass and have them shipped to the Facility Chaplain who could then transfer them to an appropriate plastic container for use by inmate Blast.

Dkt. #127, ¶ 6.  Superintendent Griffin also declares that plaintiff was transferred to Sullivan, a Mental Health Service Level 1 facility, because of threats of self-harm and was housed in the Residential Crisis Treatment Program for more than a month after threatening self harm and threatening to start a fire.  Dkt. #127, ¶ 7.

Plaintiff declares that she is allowed to possess a lamp with a glass lightbulb in her cell at Sullivan and notes that Directive 4911 permits one ounce glass bottles of toiletries when received directly from an approved vendor in original packaging.  Dkt. #132, ¶ 14 & Dkt. #134, ¶ 5.  Plaintiff provided the Court with a copy of Directive #4911, which provides:

> Toilet Articles/Cosmetics
>
> * * *
>
> - No glass, except when approved toiletries cannot be obtained in plastic containers or cans then one ounce glass containers may be permitted when received directly from an approved store or manufacturer as packaged by them.

Dkt. #134, p.3.  In any event, plaintiff notes that it was DOCS which chose the vendor for the prayer oils; plaintiff's preferred vendor sold the prayer oils in plastic bottles.  Dkt.

#132, ¶¶ 5-6.  Plaintiff declares that the secure roll on ball prevents transfer of the oils to a plastic container and, in any event, objects to the transfer of religious oils into common containers by DOCS staff.  Dkt. #132, ¶ 25.  Plaintiff declares that she "has not once used her glass oil bottles to commit any acts of self-harm" nor has she ever lost any of the glass oil bottles.  Dkt. #132, ¶ 7.  Plaintiff declares that the religious permit was honored in Wende, Mid-State and Auburn Correctional Facilities without incident and notes that the religious permit explicitly states that it is applicable at all DOCS facilities.  Dkt. #132, ¶ 15 & 17.  In addition, plaintiff declares that inmates are allowed to order and receive up to $128 in tobacco products from the commissary and that Native Americans, even those in disciplinary SHU, are allowed to burn sage and possess a lighter. Dkt. #132, ¶ 16.   Plaintiff seeks monetary damages as compensation for DOCS' restraint on her inability to practice her Santeria faith since October 24, 2013.  Dkt. #133, ¶ 18.

## DISCUSSION AND ANALYSIS

It is well settled that a "party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Commercial, LTDA, v. GE Medical Systems Info. Techs, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation omitted).  "It need not be established that the violation was willful."  *Id.*  However, a contempt order is a potent weapon to which courts should not resort where there is a fair ground of doubt as to the

wrongfulness of the defendant's conduct. *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (quotation and citation omitted).

The permit for religious items referenced in the Court Ordered settlement, as amended, clearly allows plaintiff to possess glass bottles of prayer oils and tobacco (loose and cigars), not only at Wende, where the amended permit was issued, but also if plaintiff is transferred to another facility. Dkt. #108, p.8, ¶¶ 2 & 5. Despite the clarity of the language in the permit for religious items, and despite the absence of any evidence of problems in regards thereto at other facilities at which plaintiff has been housed, DOCS has transferred plaintiff to facilities at which she has been denied possession of these items without evidence of any effort, let alone diligence, to comply with the terms of the permit for religious items in so far as it allows plaintiff to possess prayer oils and tobacco. The Court will not permit DOCS' decision to house plaintiff in SHU, absent any indication of disciplinary reasons for such placement, to unilaterally alter the terms of the settlement and the permit for religious items incorporated therein. Although the Court is not insensitive to the safety and security issues posed by plaintiff, DOCS may not simply ignore the terms of a settlement ordered by the Court. If DOCS determines that a modification of that order is necessary, and cannot be negotiated with plaintiff, it should seek such relief from the Court.

## **CONCLUSION**

For the foregoing reasons, the Court grants plaintiff's motions for civil contempt and directs that, within 30 days of this Order, DOCS provide plaintiff with access to prayers oils in original plastic or glass bottles, no more than two ounces in

size, from approved commercial vendors and access to tobacco (loose and cigars) as normally allowed in the facility in which plaintiff is currently housed.  In addition, as compensation for being denied use of prayer oils and tobacco in her religious practice for approximately 60 weeks, DOCS is ordered to pay plaintiff $1500.

**SO ORDERED.**

DATED:    Buffalo, New York
          December 23, 2014

                                         s/ H. Kenneth Schroeder, Jr.
                                       **H. KENNETH SCHROEDER, JR.
                                       United States Magistrate Judge**