**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**SYNTHIA CHINA BLAST, 97-A-0308,**

                              **Plaintiff,**          07-CV-0567(Sr)

v.

**BRIAN FISCHER, Commissioner, et al.,**

                              **Defendants.**

---

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all further proceedings, including the entry of final judgment. Dkt. #50.

Currently before the Court is plaintiff's motion to hold defendants in civil contempt of this Court's Order of Stipulated Settlement. Dkt. # 148. For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff, a transgender male-to-female inmate of the Department of Corrections and Community Supervision ("DOCCS"), commenced this action *pro se*, alleging that DOCCS was depriving her of the opportunity to practice the Santeria religion, in violation of her constitutional rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Dkt. #11.

The parties submitted a stipulation of settlement and order of dismissal (Dkt. #71), which the Court "SO ORDERED" on October 23, 2009. Dkt. #72. The stipulation of settlement provided, *inter alia*, that defendants would issue a religious permit for items agreed to by the parties, which plaintiff acknowledged were sufficient for plaintiff to freely and adequately practice her religion. Dkt. #71, ¶ 2. A permit for religious items was issued on October 22, 2009 (Dkt. #140-7), and amended most recently on April 2, 2012. Dkt. #140-8.

The amended permit allows plaintiff to possess the following items as part of plaintiff's practice of her Santeria faith:
- photographs or drawings of two religious figures;
- six 2 ounce bottles of ritual and prayer oils;
- four 8 ounce bottles of ritual water;
- five 8 ounce bottles of spiritual water;
- two cups of powdered eggshell;
- 19 cowry shells;
- a small wooden box;
- two Ellegua soap heads; five stones;
- six avocado seeds; a red and white feather;
- 11 laminated prayer cards;

- Orisha photos;

- a plastic bowl with a lid;

- 33 sets of Orisha bead necklaces;

- one Holy Saint of Death necklace;

- three colored cloths for use on the shrine;

- a shrine kept in accordance with Directive 4202, paragraph N.2.d, which may also include "normally allowable items, such as tobacco (loose and cigars);" and

- religious books subject to review and approval by the normal media review process.

Dkt. #140-8, ¶ 5. The amended religious permit states that it will serve as plaintiff's "statewide religious item exemption," but makes clear that the religious permit

> does not grant an exemption to other Departmental rules. For example: 1. You may not have printed materials that are contraband that violates the normal media review provisions. 2. This exemption allowing you to have these religious items for your shrine does not grant you an exemption to the property limits of offenders who transfer. 3. If you are sent to disciplinary SHU, or on a court trip, or a medical trip, this exemption does not allow you any special privileges beyond those afforded to other offenders in those specific situations.

Dkt. #140-8, p.5.

Plaintiff transferred into Mid-State Correctional Facility ("Mid-State"), on September 15, 2015. Dkt. #148, ¶ 9. Plaintiff was housed in a highly secured Long Term Protective Custody Unit in a Special Housing Unit ("SHU"), consisting of 32 cells with solid steel doors and a gated mesh window on the door. Dkt. #148, ¶ 11. Inmates were never allowed to move freely within the gallery or have access to other cells. Dkt. #148, ¶¶ 13-17. Plaintiff declares that her religious permit was known to all staff on the

unit, as well as to the Package Room Officers and the Coordinating Chaplain's Officer, and a copy of the religious permit was on plaintiff's shrine on her locker within her cell, as well as in the Inmate Records Coordinator file and in plaintiff's Guidance Unit folder. Dkt. #148, ¶ 18.

On January 12, 2017, plaintiff was transferred out of Mid-State to Five Points Correctional Facility ("Five Points"), to serve a disciplinary sentence. Dkt. #148, ¶ ¶ 21-22. C.O. Luce packed up plaintiff's personal property. Dkt. #148, ¶ 22 & p.30. Plaintiff specifically inquired of C.O. Luce whether he had packed up plaintiff's religious shrine and permitted religious items as he placed four draft bags into the van prior to plaintiff's transfer. Dkt. #148, ¶ 23. C.O. Luce responded affirmatively. Dkt. #148, ¶ 23. However, the Personal Property Transferred Form signed by C.O. Luce does not list anything but "Religious Beads (1)" under religious articles and does not otherwise suggest that many of the items listed in the permit for religious items were packed for transfer. Dkt. #148, p.30. Plaintiff notes that, pursuant to Directive 4913, religious items are required to be packed first so as not to be excluded should an inmate's possessions exceed the maximum number of draft bags permitted. Dkt. #148, ¶ 22 n.2.

On January 13, 2017, C.O. Eva Tanis opened plaintiff's draft bags to provide plaintiff the property which she was permitted to possess in SHU. Dkt. #148, ¶30. Plaintiff informed C.O. Tanis, as well as C.O. Decker and Sgt. Casper that "all of her religious items, with the exception of 2 ritual waters, 3 bath waters, and 1 beaded necklace was not listed on her property pack up form ("I-64")." Dkt. #148, ¶ 31.

Plaintiff alleges that, following an investigation at Five Points, "it was determined that C.O. Luce, who packed up plaintiff's cell at Mid-State CF and prepared the Mid-State CF I-64, did not include any of the missing religious exemption items that were located in plaintiff's . . . cell," including:

- 25 Santeria Books (which DOCS photographed so as to document what plaintiff was allowed to possess pursuant to the religious permit);

- 23 Santeria Beaded Necklaces (which DOCS photographed);

- 19 Cowrie Shells (which DOCS photographed);

- 2 Religious figure drawings/photos;

- 6 glass bottles of Santeria oils;

- 2 ritual waters - 4 oz. each;

- 2 bath waters - 8 oz. each;

- 2 cups crushed eggshells - 2 oz each;

- 1 Santeria Shrine with cigars, loose tobacco & photos;

- 1 Cigar Box;

- 2 Ellegua Statutes;

- 6 Avocado Seeds with plastic dish;

- 2 Feathers;

- 11 Laminated Prayer Cards;

- 40 Orisha Photos;

- 1 Plastic Orisha Yellow Bowl with Lid;

- 1 Holy St. Death Necklace; and

- 3 Handkerchiefs - Red, Yellow & Green

Dkt. #148, ¶ 35.

> A Memorandum dated February 26, 2017, explains that Sgt. Casper
>
>> gave CO Tanis authorization to open the seals on inmate Blast's property. This was done to investigate a claim that the inmate had put in for missing property, which consisted largely of religious material. Due to the claim and to ensure that nothing was missed the bags were opened and another I-64 was completed. During this the following claimed missing items were found: 5" comb, extension cord, personal stationary, 2 photo albums. These items were placed in the inmate's property and marked on the I-64.

Dkt. #148, p.33. Sgt. Casper authorized payment for a watch which was listed on Mid-State's I-64 but "was unable to be accounted for by staff at Five Points." Dkt. #148, p.32. Sgt. Casper indicated that "[a]ll other items that the inmate is claiming are missing are not on the Mid State CF (transporting facility) I-64 and was not in the property when opened at Five [P]oints." Dkt. #148, p.32.

Plaintiff declares that these "religious items held years of prayer, worship, tears, and were undisputed[ly] vital to her religious worship and freedoms." Dkt. #148, ¶ 43. Plaintiff seeks $6,500 in compensation for the destruction of her religious items and the deprivation of her right to practice her religion as a result of the destruction of these items. Dkt. #148, ¶¶ 46 & 51.

The Attorney General argues that plaintiff does not allege that DOCCS has altered the permit, but rather that an employee "lost, allowed to be stolen or destroyed, intentionally or unintentionally, the subject religious items during the course of her transport from one facility to another." Dkt. #150, ¶ 4. The Attorney General argues that this does not amount to a claimed deprivation of constitutional rights to free exercise of

religion, but is a matter properly addressed by way of a claim for lost property in the Court of Claims. Dkt. #150, ¶ 4.

## **DISCUSSION AND ANALYSIS**

It is well settled that a "party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Commercial, LTDA, v. GE Medical Systems Info. Techs, Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (internal quotation omitted). "It need not be established that the violation was willful." *Id.* "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged" but "may not be imposed as a purely punitive measure." *Id.* at 657.

In the instant case, there is no suggestion by plaintiff that C.O. Luce's actions were anything other than random and unauthorized or that defendants were attempting to alter, ignore or rescind their agreement to issue plaintiff a religious permit for items agreed to by the parties to allow plaintiff to practice her religion such that sanctions would do anything more than compensate plaintiff for her loss of those items. Thus, even presuming that C.O. Luce intentionally destroyed plaintiff's religious items with knowledge of plaintiff's right to possess them pursuant to the permit which was located on the shrine and of which C.O. Luce was aware, the appropriate remedy is an inmate personal property claim and, if necessary, resort to the Court of Claims. *See Smith v. O'Connor*, 901 F. Supp. 644, 647 (S.D.N.Y. 1995) ("A claim for deprivation of property cannot lie in

federal court if the state courts provide an adequate remedy for the deprivation of that property."); *See also Diaz v. Coughlin*, 909 F. Supp.146, 150 (S.D.N.Y. 1995) ("Whether negligent or deliberate, the destruction of an inmate's property caused by a prison officer's unauthorized conduct does not give rise to a claim under the Due Process Clause if the state provides that inmate with an adequate post deprivation remedy.").

## CONCLUSION

For the reasons set forth above, plaintiff's motion for civil contempt (Dkt. #148), is denied.

**SO ORDERED.**

DATED:	Buffalo, New York
	February 28, 2019

	  s/ H. Kenneth Schroeder, Jr.
	**H. KENNETH SCHROEDER, JR.**
	**United States Magistrate Judge**